**In the Matter of the ESTATE OF Walter F. WOLFINGER, deceased, Appellee,**

v.

**Susan WOLFINGER, Appellant.**

**No. 890323–CA.**

Court of Appeals of Utah.

May 14, 1990.

Thomas M. Higbee and Colin R. Winchester, Cedar City, for appellant.

Michael W. Park, Cedar City, for appellee.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Susan Wolfinger appeals from a judgment in favor of the Estate of Wolfinger after a trial based on stipulated facts. We reverse.

Susan Wolfinger (hereinafter "daughter" or "Susan"), the daughter of the decedent Walter F. Wolfinger (hereinafter "father" or "Walter"), filed a claim against her deceased father's estate claiming, among other things,[1] that she was entitled to $30,000 as the surviving member on a joint account with her father.

The stipulated facts before the trial court establish the following factual context for this dispute. Walter maintained a number of accounts in the form of promissory notes with NEFCO Finance Company ("NEFCO") during his lifetime. Walter opened a $30,000 account on June 14, 1983, which was evidenced by an interest-bearing note in Walter's name. This is the account at issue in this appeal. This account had a corresponding ledger card which NEFCO used as a means of internal accounting to record the purchase of the note and payments of interest.

Sometime prior to his death, Walter orally instructed NEFCO to place his daughter's name on the $30,000 account as a "joint payee." NEFCO placed the daughter's name on the ledger card. However, there was no evidence that her name was ever placed on the promissory note. After an argument with his daughter, Walter orally instructed NEFCO that he wanted his daughter's name removed from the account. At the time of Walter's death, his daughter's name remained on the ledger card for the account.

Before trial, the parties executed a pretrial order signed by the trial court which delineated two issues for trial. The trial court entered judgment in favor of the Estate of Wolfinger on a third ground, finding that Walter had never created a joint account with his daughter and therefore his daughter was not entitled to the proceeds from the $30,000 note.

When a trial court's decision is based upon stipulated facts, we do not accord its factual findings the normal deference, but will "sustain the lower court's decision only if convinced of its correctness." *Sacramento Baseball Club, Inc. v. Great Northern Baseball Co.*, 748 P.2d 1058, 1060 (Utah 1987). Further, we review the trial court's conclusions of law under a correction-of-error standard. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985); *Stewart v. Coffman*, 748 P.2d 579, 580–81 (Utah Ct.App.1988).

---

1. Susan also claimed she was entitled to the funds from another account which is not at issue on this appeal.

## PRETRIAL ORDER

Initially, Susan claims the trial court erred when it based its decision on a legal issue not specified by the parties in the written pretrial order. The pretrial order listed two issues of law which were to be decided by the court:

(a) Can a joint tenant unilaterally destroy the joint tenancy by asking that the name of the other joint tenant be deleted from the appropriate documents?

(b) Can an inter vivos gift be unilaterally revoked by the donor once the gift has been completed?

The trial court, however, decided the case on a third legal ground, namely, that Walter had never created a joint account with his daughter.

To resolve this issue, we examine the relationship between Rules 16 and 15 of the Utah Rules of Civil Procedure. Rule 16(b) provides that a pretrial conference can result in a formal pretrial order which includes "the formation and simplification of the issues." Rule 15(b) allows for amendments to pleadings to conform to evidence admitted at trial. Rule 15(b) states, in pertinent part:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The Utah Supreme Court has held that "Rule 16 must be read in light of Rule 15(b), U.R.C.P., which provides for liberality in allowing amendment of the pleadings to conform to the evidence." *Stubbs v. Hemmert*, 567 P.2d 168, 170 (Utah 1977). In *Stubbs*, the court held that a trial court properly deviated from the issues set out in the pretrial order where no objection was made to the introduction of the evidence which formed the basis for the court's resolution of the case. In upholding the trial court's modification of the pretrial order, the supreme court states that "[a] party may not introduce evidence and later complain that its admission is error.... Where no objection has been made to the introduction of the evidence it is deemed that the Court modified the pretrial order as a matter of its own discretion." *Id.* at 170.

In a recent decision, this court held the test for determining whether amendment should be allowed under Rule 15(b) is "whether the opposing party had a fair opportunity to defend and whether it could offer additional evidence if the case were retried on a different theory." *Colman v. Colman*, 743 P.2d 782, 785 (Utah Ct.App. 1987) (quoting *R.A. Pohl Constr. Co. v. Marshall*, 640 F.2d 266, 267 (10th Cir. 1981)).

In this case, the evidence was submitted to the trial court by stipulation. Susan never objected to the facts as stipulated, and therefore exposed herself to any decision which the evidence would support. Moreover, Susan has demonstrated no prejudice by the court's variance from the pretrial order. In conclusion, we find no error in the procedure utilized by the trial court.

## CREATION OF A JOINT BANK ACCOUNT

■ Susan on appeal also contends the undisputed facts before the trial court establish that the $30,000 account was a joint bank account which should have been paid to her on her father's death. In order to resolve her claim, we examine Utah contract law and relevant sections of the Utah Uniform Probate Code which deal with multiple-party accounts.

On June 14, 1983, Walter deposited $30,000, opening an individual account with NEFCO. Some time prior to his death, Walter directed NEFCO to add Susan's name to the account. Susan's name was added to the ledger card on the account. Susan claims Walter thus changed his account from an individual account to a joint account as defined in the Utah Uniform Probate Code. The trial judge found no

joint account had been created. We disagree.

The stipulated facts clearly state that Walter orally instructed the bank to modify his account adding his daughter as a "joint payee." There is written confirmation of this modification on the ledger card.

"Parties to a contract may, by mutual consent, modify any or all of a contract." *Ted R. Brown and Assocs., Inc. v. Carnes Corp.*, 753 P.2d 964, 968 (Utah Ct.App. 1988); *Provo City Corp. v. Nielson Scott Co.*, 603 P.2d 803, 806 (Utah 1979). There is no statutory restriction in the Utah Uniform Probate Code which prohibits an account holder from orally instructing his bank to change his individual account to a joint account. Thus, we find no basis in the stipulated facts to support the trial judge's conclusion that a joint account was not created.

Perhaps the judge focused on whether Walter intended to create a joint account under Utah Code Ann. § 75–6–101(4) (1978) or a P.O.D. account under Utah Code Ann. § 75–6–101(10) (1978). Section 75–6–101(4) defines a joint account as "an account payable on request to one or more of two or more *parties* whether or not mention is made of any right of survivorship." (emphasis added.) Section 75–6–101(7) defines a party to an account as a person "who, by the terms of the account, has *a present right,* subject to request, to payment from a multiple-party account." (emphasis added.) A P.O.D. account is one "payable on request to one person during lifetime and on his death to one or more P.O.D. payees." *Id.* at section 75–6–101(10). The stipulated facts may be ambiguous as to whether Walter intended to create a joint or a P.O.D. account, but they nevertheless establish that Walter created either a joint or a P.O.D. account by adding Susan as a "joint payee."[2]

■ Under the Utah Uniform Probate Code, a joint or a P.O.D. account can only be modified by a written request to the bank from a party to the account. Utah Code Ann. § 75–6–105 (1978). Section 75–6–105 provides, with our emphasis:

The provisions of section 75–6–104 as to rights of survivorship are determined by the form of the account at the death of a party. This form *may be altered by written order given by a party to the financial institution* to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

Since there was no evidence presented to the district court showing a written request by Walter to change the form of the account after his oral modification adding Susan as a joint payee, under Utah Code Ann. § 75–6–105 (1978), we must reverse the judgment of the district court and remand this case for entry of judgment in favor of Susan.[3]

GARFF and GREENWOOD, JJ., concur.

---

**2.** We need not determine whether Walter intended to create a joint account under section 75–6–101(4) or a P.O.D. account under section 75–6–101(10) since once either type of account has been created, the Utah Uniform Probate Code provides its form can only be changed in writing.

**3.** Our decision seems in conflict with the true intent of the deceased, Walter Wolfinger. However, Utah common law allows for oral modifi-

cations of written contracts when the facts clearly establish such was the intention of the parties. Thus, Walter's first modification of his *individual* account was effective. Unfortunately, his second intended modification was frustrated by the Utah Uniform Probate Code which mandates that all changes in the form of multiple-party accounts be in writing. We are bound to enforce the law as written by the legislature.